the same trial in which such jury issues are tried. The jury having rendered their verdict, the trial Judge would then make and file his decision on the counterclaim. If in the present case, for instance, the verdict should be for the plaintiff on the issues raised on the complaint, the trial Judge would also have to decide for the plaintiff on the counterclaim, the issues of fact on the complaint and on the counterclaim being the same; unlesss he should set the verdict aside, in which case he would make and file a decision for the defendant on the counterclaim, and the judgment thereon would be res adjudicata of the cause of action alleged in the complaint if it should be brought on for trial again. In either case, all of the issues would be completely disposed of. This was all perfectly well understood until more recent years, and is still understood by lawyers of science and experience in the practice of the law, and I am not willing to give it up out of mere regard to any mistaken decision. In this case the plaintiff had the right to file a note of issue for the jury calendar of his cause of action, and the defendant had the right to file a note of issue for the equity calendar of his counterclaim. If the cause should be reached for trial on the jury calendar first, all of the issues could be then tried in the manner already stated, but if the issues on the equity calendar should be reached first, they could be tried in the equity part of court, and the judgment thereon would be res adjudicata of the issues on the jury calendar when they should be reached.

---

## YOUNGER v. CENTRAL R. CO. OF NEW JERSEY.

(Supreme Court, Appellate Term. January 21, 1909.)

CARRIERS (§ 393*)—CARRIAGE OF PASSENGERS—BAGGAGE—DELIVERY TO CABRIER—RATIFICATION OF AGENCY OF PERSON RECEIVING.

    Where a carrier received and receipted for baggage which had been delivered by a prospective passenger to a person who had issued railroad checks therefor, and transported it to its destination, the carrier ratified the acts of the person so receiving and checking the baggage, and constituted him its agent for that purpose, so that the delivery of the baggage in good condition to that person was a delivery in good condition to the carrier.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1502; Dec. Dig. § 393.*]

Appeal from City Court of New York, Trial Term.

Action by Virginia T. Younger against the Central Railroad Company of New Jersey. Judgment of dismissal, and plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and BISCHOFF and GUY, JJ.

Forbes & Haviland (Arthur Wm. Barber, of counsel), for appellant.
De Forest Bros. (Ethelbert I. Low, of counsel), for respondent.

GUY, J. This is an appeal from a judgment entered upon the dismissal of the complaint in an action to recover damages to a trunk and

contents alleged to have been delivered by plaintiff to defendant, through a connecting carrier, for transportation as baggage from Chicago to New York. The testimony shows that the plaintiff and her husband were guests at the Auditorium Hotel in Chicago on September 20, 1904, and on that day plaintiff's husband, who acted as her agent in this transaction, purchased tickets for New York over the Baltimore & Ohio Railroad Company and the Central Railroad of New Jersey at a general ticket office located in said hotel where tickets over all railroads were sold; that on the same afternoon, about three-quarters of an hour before leaving the hotel to take the train to New York, he delivered the trunks belonging to plaintiff to the "baggage agent" in the hotel, who gave him "railway checks therefor—that is, a check for each separate piece of baggage to be delivered in New York"; that the trunks in question were then in perfect condition; that the trunks were checked through to New York, and that neither he nor the plaintiff saw the trunks thereafter until they saw them in the ferry station of the defendant company at New York, at which time they were in a damaged condition; that he could not tell whether the trunks were checked by the local transfer company; that he knew nothing about that; that his understanding was that the person to whom the trunks were delivered was a baggage porter or clerk in the employ of the Auditorium Hotel. · Plaintiff then called the manager of the Scott Transfer Company, in Chicago, who testified that he had been doing an express business for 10 years at the Auditorium Hotel in Chicago; that his company received on September 20, 1904, from W. J. Younger and Virginia T. Younger two trunks at the Auditorium Hotel; that they were delivered by his company to the Baltimore & Ohio Railroad Company, and a receipt taken therefor by his company at the time from the railroad company, which receipt was introduced in evidence by plaintiff and read as follows:

"Receipt given by B. & O. Railroad Co. * * * Frank E. Scott Transfer Co.: Received from Audit. Hotel baggage as follows: 70721, 70722, B. O. Spl. Destination, New York. I hereby acknowledge the receipt of —— pieces of baggage bearing checks and description as described above. Chicago, 9/20, 1904. Time received, 3:10 p. m. [Signature of railroad agent following.] Drivers must examine and check this receipt, note errors (if any) on back, mark 'B. O.' over numbers in bad order, and obtain receipt."

The witness further testified that the custom of the railroads in Chicago respecting the receipt of baggage in good or bad order was "to receipt for it without notation, unless it is in bad order; when it is in bad order it is so noted." Witness also testified:

"It is the regular and customary habit of my company to deliver trunks in the city of Chicago to the Baltimore & Ohio Railroad Company. The receipts identified by me are the customary receipts given by the Baltimore & Ohio Railroad Company for trunks so delivered in good order."

The amount of damage was conceded to be $275; but defendant's liability was not conceded. At the conclusion of plaintiff's case defendant moved to dismiss the complaint on the ground that "there is no proof of delivery in good condition to the initial carrier," and stated that defendant had no evidence to offer. This motion was granted, and an exception taken.

The main question raised on this appeal is whether the delivery of plaintiff's trunks to the "baggage agent" in the Auditorium Hotel in Chicago was a delivery to defendant or to defendant's connecting carrier in good condition. The respondent contends that the delivery at the hotel was merely a delivery to the transfer company that acted as plaintiff's agent for that purpose, and that proof of delivery to such transfer company in good condition was not a delivery to the initial carrier. In support of this view is the declaration of the witness Scott that his transfer company received from the plaintiff and her husband the baggage in question. The evidence, however, does not warrant this conclusion. There is no contention that Scott, the manager of the transfer company, had any personal connection with the receipt of the trunks from the plaintiff, or that plaintiff's agent, her husband, had any knowledge that he was employing a transfer company. On the contrary, he testified that he knew nothing about that. The evidence conclusively establishes that the trunks were delivered by plaintiff's husband in good condition to the "baggage agent" at the hotel, and that from such "baggage agent" he received railway checks to New York for each separate piece of baggage. It is immaterial, for purposes of this inquiry, whether such baggage was received by an employé of the hotel or an employé of the transfer company. The receipt of the baggage in its then good condition, and the delivery of railway checks therefor, which railway checks were merely receipts for baggage to be transported to New York, was ratified and adopted by the defendant railway company, through its connecting carrier, and the baggage so receipted for was transported to New York upon such railway checks and delivered to the plaintiff at its place of destination. This constituted the person who received the baggage and issued the railway checks therefor the agent of the defendant company for that purpose no matter what other relationship he sustained, either to the hotel or to the transfer company; and the delivery of the trunks to him in good condition was, therefore, a delivery to the defendant railway company, which either by previous authorization, or by subsequent ratification or adoption of his acts, constituted him its agent for the purpose of receiving baggage and issuing railway checks therefor. The dismissal of the complaint was, therefore, error, and the judgment should be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.