THE PEOPLE OF THE STATE OF NEW YORK on the Information of JAMES PIGNATARO, *v.* EDWARD DEJULIS, Defendant.

City Court of New Rochelle, August 21, 1940.

*William A. Davidson, County Attorney* [*Francis J. Morgan, Deputy County Attorney,* of counsel], for the People.

*Boudin, Cohn & Glickstein* [*Samuel Cohn* of counsel], for the defendant.

Fasso, J. The defendant is charged with a violation of section 1 of article II of the Ordinances, Rules and Regulations of the Department of Parks of the County of Westchester, which reads as follows:

" ADVERTISING PROHIBITED. No person shall post, paint, affix, distribute, deliver, place, cast or leave about, any bill placard, ticket, hand bill, circular or advertisement; display any flag, banner, transparency, target, sign, placard, or any other matter for advertising purposes; or operate any musical instrument or drum for advertising purposes; or for any purpose whatsoever in any park, or reservation, except under a permit."

The charge against the defendant arises out of the following circumstances: On June 17, 1940, the defendant carried a sign in Glen Island Park which read: " Glen Island Casino Unfair to Organized Labor." The sign bore also the name of the local union of the American Federation of Labor with which the defendant was affiliated. The Glen Island Casino operates a restaurant in Glen Island Park, which is a part of the Westchester County Park System. For some time prior to the date of the alleged occurrence, the union of which the defendant is a member, and the Glen Island Casino, were governed by an agreement whereby the Glen Island Casino agreed to employ only members of the union, and the union agreed to furnish to the Casino all necessary employees. The agree-

ment also provided for the terms and conditions of employment. This agreement expired on January 1, 1940, but the members of the union continued to work until about April, 1940. At about that time, other and different employees were hired, and, as the evidence reveals, the new help was paid a lower rate. For example, the scale of wages for waiters under the agreement had been ten dollars a week, whereas, the new employees received only eight dollars a week. The new employees are members of a strictly local organization known as the American Association of Waiters and Kitchen Employees. It is not affiliated with any national or parent organization.

In carrying the sign described, it was the purpose of the defendant to picket the Glen Island Casino and make known in that way his grievance and that all other former employees. They complain because the Glen Island Casino failed to renew its contract with the Hotel and Restaurant Union, Local 178. They complain, moreover, because of the employment of waiters and other help at less than the union scale. There is no evidence that the defendant was in any way disorderly. It appears, moreover, that the union endeavored to obtain a permit from the county authorities to picket the Glen Island Casino, and that the permit was refused.

The defendant contends that a labor dispute existed, and as a consequence he had the right to picket. He also contends that the rules of the department of parks of the county of Westchester, the applicable provision of which has been set forth, cannot in any way abrogate or restrict that right. The People, on the other hand, contend that the defendant failed to show that the statement on the sign was true and correct, and that he is, therefore, not entitled to the privilege now asserted by him.

It is well established that the park commission of the county of Westchester may establish reasonable rules and regulations, to the end that the public may derive a maximum of pleasure and enjoyment from parks and other recreational areas. The desire of the commission to keep the parks free from intrusion of all kinds, to restrain annoyance to the public, and to promote high standards of relaxation and recreation deserves approval and commendation. In the instant case, however, the Glen Island Casino is operated for private gain and profit, by private individuals. The fact that it happens to be located on property owned by the county of Westchester does not grant it an immunity from the consequences of labor disputes which other business establishments do not possess.

In recent years there have been great changes in the law, little understood by the general public, in the field of labor relations. In the case of *May's Fur & Ready to Wear, Inc.,* v. *Bauer* (282 N. Y. 331) it was held by the highest court of our State that a labor union had the right to picket a mercantile establishment which engaged about three hundred employees, despite the fact that none of the employees were in any way affiliated with any union and were completely satisfied with their wages and working conditions. In that case the court stated: " Although the members of the defendant union are not the employees of the plaintiff employer, no less is their direct interest in the labor policy of an employer who is engaged in the same industry as they are. It is common knowledge that the conditions of employment prevailing in a given establishment cannot be insulated against the influence of different standards which may exist elsewhere in that industry. * * * it is the settled law of this State that the legitimate interests of a labor union are not confined to acts directed against an employer of its members." Although no strike existed at the Glen Island Casino at the time the alleged offense occurred, the right to picket may, nevertheless, be exercised if there was a labor dispute. Section 876-a of the Civil Practice Act states that a labor dispute shall be found to exist " regardless of whether or not the disputants stand in the relation of employer and employee." In the case of *Exchange Bakery and Restaurant, Inc.,* v. *Rifkin* (245 N. Y. 260, 263) the Court of Appeals stated: " Picketing without a strike is no more unlawful than a strike without picketing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured." The authorities, therefore, reveal that in the instant case a labor dispute unquestionably was in existence, and the right to picket, as a consequence, can be exercised, unless it is in some manner legally prohibited.

The rules and regulations of the Westchester County Park Commission prohibit the display of any banner, sign or placard without qualification, except under permit. The defendant sought to obtain a permit, but was unable so to do. In the cases of *Thornhill* v. *State of Alabama* (310 U. S. 88) and *Carlson* v. *State of California* (Id. 106) it was stated: " the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution. * * * ' Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution '" (p. 102). "The carrying of signs and banners * * * is a natural and appropriate means of * * * publicizing the facts of a labor dispute "

(p. 112). In the two cases mentioned the Supreme Court of the United States declared as unconstitutional laws in the State of Alabama and in the State of California which sought to prohibit and restrict the right to picket. The court emphasized that the right was protected by the Constitution. In my opinion, the regulations of the park commission were not intended to abrogate or to limit the right peacefully to picket. If they were so construed, it would be contrary to the provisions of the Civil Practice Act, to the decisions of the highest court of the State of New York, and in conflict with the rulings of the Supreme Court of the United States.

The People, however, contend that the legend on the sign was untrue and incorrect, and, as a consequence, the defendant is not within the protection of the Constitution. The sign stated merely that the Glen Island Casino was unfair to organized labor. It cannot be said as a matter of law that the sign was inaccurate, because the evidence reveals that the new help received a lower scale of wages than that maintained by the union. Moreover, it appears that the employer refused to renew its agreement with the union and has hired, with the exception of two employees, members of an organization not affiliated with any recognized labor union. Under the circumstances, especially in the light of the reasoning in *May's Furs and Ready to Wear, Inc.,* v. *Bauer (supra)*, it cannot be stated that the sign was untrue and incorrect. It is doubtful, moreover, as to whether the issue of the truthfulness of the sign is relevant to the issues in this case, for the defendant is not charged with disorderly conduct, but merely with the violation of an ordinance which prohibits the carrying of banners and placards. A case not unlike the instant one is *People* v. *Ribinovich* (171 Misc. 569). In that case the defendants were convicted for a violation of the rules and regulations of the department of parks of the city of New York, which prohibits the exhibition of " any sign, placard, notice, declaration or appeal of any kind or description  *  *  * in any park or upon any park street, except by permit." The defendants carried signs which read, " This Job Unfair To Union Workers, Local Union Number 3," etc. Both the sign and the applicable regulation, therefore, were similar to those involved in the case at bar. The defendants were convicted for a violation of the regulation mentioned, but upon appeal the judgment of conviction was unanimously reversed and the complaint against the defendants was dismissed.

Upon the authorities contained herein, and upon all of the facts and circumstances presented, this court is constrained to hold that the defendant is not guilty of the violation with which he has been charged, and he is, accordingly, discharged.